UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANICE M. FRENCH,<br><br>        Plaintiff,<br><br>        v.<br><br>IDAHO STATE AFL-CIO, Idaho, a labor organization; IBEW LOCAL 283, a labor organization.<br><br>        Defendants. | Case No. 1:15-cv-00134-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendant Idaho State AFL-CIO's Motion to Dismiss for Failure to State a Claim (Dkt. 9) and Defendant IBEW Local 283's Motion to Dismiss for Failure to State a Claim (Dkt. 16). The motions are fully briefed and at issue. For the reasons discussed below, the Court will grant in part and deny in part both motions.

At the outset, the Court notes that when a party files a motion to dismiss and submits evidence outside the pleadings, the Court has discretion whether to consider the evidence and to treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Although the parties have submitted evidence outside the pleadings, the Court has not considered it and therefore treats both motions as motions to dismiss.

# FACTUAL BACKGROUND

Defendant Idaho State AFL-CIO ("Idaho AFL-CIO") hired Plaintiff Janice French in August 2012 as an office manager. *Compl.* ¶ 19, Dkt. 1-4. Before hiring French, Idaho AFL-CIO formed a collective bargaining agreement (CBA) with Defendant International Brotherhood of Electrical Workers Labor Union, Local 283 ("IBEW"). *Id.* ¶¶ 11, 24. The CBA covered French's position and provided that "it is also understood and agreed that the Employer has the right to terminate the services of employees for just cause, subject to the Grievance Procedure contained in this Agreement." *CBA* at 9, Dkt. 19-1. Since the CBA did not detail French's duration of employment or rate of pay, Idaho AFL-CIO and IBEW entered into a Memorandum of Understanding (MOU) specifying those terms. *MOU*, Dkt. 19-1.[1]

---

[1] Neither the CBA nor the MOU were submitted as exhibits to the Complaint. Idaho AFL-CIO submitted what it states are the applicable CBA and MOU in conjunction with its motion to dismiss. *See* Dkt. 9-3. In her response brief, French countered that the CBA submitted by Idaho AFL-CIO was the incorrect one, and she attached what she believes the correct version to be in Exhibit Z to her counsel's affidavit. *See* Dkt. 19-1. The versions are largely identical. It appears that Idaho AFL-CIO's version was applicable July 1, 2012 to June 30, 2014 and was signed on June 28, 2013. French's version was in effect from July 1, 2012 to June 30, 2013, and was signed on June 29, 2012. The versions do differ, however, with regard to the MOU's that are attached to the last page of each. Idaho AFL-CIO's version contains a MOU specific to French. It states her hourly wage and provides benefits information. The MOU submitted by French does not appear to be specific to her. Rather, it simply lists that "project coordinators" have a monthly rate of pay of $3,570.00. French's response brief is less than clear, but she appears to be arguing that the CBA she submitted in Exhibit Z is the proper one, but the MOU submitted by Idaho AFL-CIO is the appropriate one because it is "specific to [French's] position." Dkt. 19, p. 9. While it is unclear why French would submit a MOU that was not the one applicable to her, thus inviting only confusion, the Court will accept French's argument as true. The Court may take these documents into consideration without converting the pending motions to motions for summary judgment, because they were incorporated by referenced in the Complaint. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to the complaint, it may be incorporated by reference into a (Continued)

French maintains that she experienced sexual harassment and discrimination while employed by Idaho AFL-CIO. *Compl.* ¶ 93, Dkt. 1-4. According to French, Idaho AFL-CIO's President, Rian Van Leuven, regularly "made sexually suggestive remarks and jokes directed towards Plaintiff or about females in general." *Id.* ¶ 32. Van Leuven's comments were "laced with sexual innuendos, often implicating Plaintiff engaged in oral sex." *Id.* ¶ 36. French also alleges she experienced disability discrimination during her employment. *Id.* ¶¶ 120-22. Though French never specifies the nature of her disabilities in her First Amended Complaint ("Complaint"), she notes that they impact her speech and that she informed Van Leuven of them when hired. *Id.* ¶¶ 28, 43.

Throughout 2012, French made "direct objections" to Van Leuven's sexual comments, but the comments continued. *Id.* ¶ 36. In March 2013, at a staff meeting, French again requested that Van Leuven stop making sexual comments. *Id.* ¶ 39. Van Leuven did not deny making the comments and instructed her to "report any future concerns to her Union Representative." *Id.* Van Leuven then threatened that he would reduce French's job duties to "answering [the] phone and paying bills." *Id.* ¶ 40. After the meeting, French began experiencing problems with co-worker Denise McDonald, who was supervised by Van Leuven. *Id.* ¶ 41. French alleges that after the staff meeting,

---

complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims.")

McDonald "sided with Mr. Van Leuven in matters related to Plaintiff," causing French stressful working conditions. *Id.*

French met with Van Leuven and McDonald in an effort to resolve tensions during November 2013. *Id.* ¶ 42. But according to French, the meeting was unproductive. *Id.* ¶ 43. French claims that McDonald sided with Van Leuven and that the meeting was "hostile," with McDonald saying she did not "like the way [French] talk[ed]." *Id.* ¶ 43. Since French's disabilities impact her speech, she understood McDonald's comment to refer to her disabilities. *Id.* Similarly, a couple of weeks after the November 2013 meeting, Van Leuven inadvertently called French on the phone. *Id.* ¶ 50. French answered to hear Van Leuven and McDonald criticizing French and her work, "especially those aspects which were affected by her disability." *Id.* ¶¶ 51, 52.

In December 2013, French reduced to working part-time hours on doctor's orders "because the hostile work environment had exacerbated her disability." *Id.* ¶¶ 46, 47. Around that time, French contacted Benny Antunes, Defendant IBEW's representative, to discuss Van Leuven. *Id.* ¶ 54. Antunes arranged a meeting between French, Van Leuven, McDonald, and Andrea Wassner, Idaho AFL-CIO's Executive Board member, on December 12, 2013. *Id.* French questioned Van Leuven about his inadvertent phone call at the meeting, but Van Leuven did not substantiate any of the criticisms and told French she "did an exemplary job." *Id.* ¶¶ 55, 56.

French contacted the Idaho Human Rights Commission (IHRC) on March 7, 2014, intending to file a charge of discrimination against Idaho AFL-CIO. *Id.* ¶ 60. Instead of

filing a charge, however, French only discussed with Van Leuven and the December 12 meeting. *Id.* ¶¶ 59, 60, 63. French also informed the IHRC of Wassner's presence at the December 12 meeting. *Id.* ¶ 63. At some point, though it is not clear when, French learned that Wassner was an IHRC Commissioner, in addition to being an Executive Board member for Idaho AFL-CIO. *Id.* ¶¶ 61, 62.

On March 17, 2014, Idaho AFL-CIO called French into an unexpected meeting with Van Leuven, Wassner, and Ken Weismore, Vice President of Idaho AFL-CIO. *Id.* ¶ 64. At that meeting, Idaho AFL-CIO notified French via letter that she was being suspended without pay for making "significant misrepresentations to staff, officers or the board." *Id.* ¶ 64; *Compl. Ex. A*, Dkt. 1-4. The letter instructed her that a follow-up meeting would be held on March 21, 2014. *Id.* ¶¶ 65, 67.

French's suspension prompted her to again contact the IHRC on March 18, 2014. *Id.* ¶ 68. Upon doing so, French confirmed that Wassner was both "an AFL-CIO Executive Board member, and a Commissioner for the IHRC." *Id.* Due to Wassner's conflict of interest, French alleges the IHRC advised her not to pursue any claims of discrimination with the IHRC and also discouraged her from filing a claim with the U.S. Equal Employment Opportunity Commission. *Id.*

On March 21, 2014, French met with Antunes, Van Leuven, Wassner, and Weismore for a follow-up meeting regarding her suspension. *Id.* ¶ 69. Van Leuven provided French with another letter detailing the reasons for her suspension and instructed her to sign the letter if she wanted to return to work. *Id.*; *Compl. Ex. B*, Dkt. 1-

4. French, however, continued to dispute the allegations and refused to sign the letter. *Id.* ¶ 70. Antunes initially advised French to dispute and not sign the letter, but during the next few days, Antunes stopped responding to her requests for advice. *Id.* ¶¶ 71, 73. Based on her continued refusal to sign the suspension letter, Van Leuven terminated French on March 31, 2014. *Id.* ¶ 75.

French brings claims against Idaho AFL-CIO and IBEW for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII); (4) sexual harassment resulting in a hostile work environment under Title VII; (5) retaliation under Title VII; (6) disability discrimination under the Americans with Disabilities Act (ADA); and (7) interference with her rights under Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA).  Both defendants have moved to dismiss all of French's claims.

## LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted

as true, that "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is

facially plausible when the plaintiff pleads sufficient facts to allow the Court to

reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 556. The

plausibility standard is not akin to a "probability requirement," but it asks for more than a

sheer possibility that the defendant acted unlawfully. *Id.* Where a complaint pleads facts

that are "merely consistent with" the defendant's liability, it "stops short of the line

between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

Two "working principles" underlie the pleading standard. *See Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). First, the tenet that a court must accept as true all of the

allegations in a complaint is inapplicable to legal conclusions. *Id.* "Rule 8 marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions." *Id.* at 678-79. Second, only a complaint stating a plausible claim for

relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.*

Generally, under Rule 12(b)(6), the Court may not consider any evidence outside

the pleadings without converting the motion into one for summary judgment and giving

the non-moving party an opportunity to respond. *See* Fed. R. Civ. P. 12(d); *United States*

*v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). "A court may, however, consider certain

materials—documents attached to the complaint, documents incorporated by reference in

the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

Dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). This Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Calif. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether she "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

## DISCUSSION

### 1.     French's Contract-Based Claims

#### A.     Breach of Contract

Defendants seek to dismiss French's state law breach of contract claim on the basis that it is preempted by § 301 of the Labor Management Relations Act.

Section 301 "preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an interpretation of a collective bargaining agreement." *Beals v. Kiewit Pacific Co., Inc.*, 114

F.3d 892, 894 (9th Cir. 1997).[2] "The Supreme Court decided early on that in enacting this statute, Congress charged federal courts with a 'mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). Thus, the "'preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (citation omitted).

The Ninth Circuit applies a two-part test to determine whether § 301 preempts a state law claim. *Burnside*, 491 F.3d at 1059. First, a court must assess "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* If the right exists independent of the CBA, the second inquiry is "whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S.

---

[2] Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

386, 394 (1987)).

French argues that the MOU is an individual employment contract independent of the CBA. The Supreme Court has held that "individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 (1987). However, the Court in *Caterpillar* was addressing an employment contract for a position that was not covered by a collective bargaining agreement, negotiated at a time when the employee was, likewise, not covered by a collective bargaining agreement. Thus, *Caterpillar* does not alter the general rule that "any 'independent agreement of employment [concerning a job position covered by the CBA] could be effective only as part of the collective bargaining agreement.'" *Beals v. Kiewet Pac. Co., Inc.*, 114 F.3d 892, 894 (9th Cir. 1997) (alteration in original) (citation omitted).

The defendant in *Beals* hired the plaintiff as a pump operator. *Id.* at 893. During employment negotiations, the defendant sent the plaintiff a "move letter" specifying the duration of employment. *Id.* A pre-existing CBA, however, covered the pump operator position and did not guarantee the duration of employment. *Id.* The CBA instead permitted the defendant to discharge employees for reduction in force and just cause. *Id.* When the defendant discharged the plaintiff before the end of the term specified in the move letter, the plaintiff argued that the defendant breached the move letter. *Id.* The Ninth Circuit rejected this argument and held that "[s]ince the parties do not dispute that

the position Beals was hired to fill . . . was covered by the CBA, the CBA controls and any claims seeking to enforce the terms of the move letter are preempted." *Id.* at 894.

Here, the answer to the first *Burnside* inquiry is dispositive of the issue—that is, the alleged breach of contract involves rights conferred upon French by virtue of the CBA. French argues that the MOU applicable to French is not the "Schedule A" referred to in the CBA because her MOU is instead labeled "Schedule A (1)." Because the CBA does not specifically incorporate the MOU, French argues, the MOU is an independent agreement. But even assuming this is true, the CBA nonetheless preempts any terms in the MOU. Here, it is the CBA—not the MOU—that provides Idaho AFL-CIO could terminate French for "just cause." The thrust of French's breach of contract claim is that Idaho AFL-CIO "terminated [her] employment without just cause." *Compl.*, Dkt. 1-4, ¶ 84. Thus, French's right to be terminated only for just cause exists solely as a result of the CBA. Finally, like the plaintiff in *Beals*, French does not dispute that the CBA covered her position as office manager. *Compl.* ¶¶ 11, 24, Dkt. 1-4. Accordingly, the CBA controls and any claims seeking to enforce the terms of the CBA or the MOU are preempted.

### B.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants also argue that § 301 preempts French's claim for breach of the implied covenant of good faith and fair dealing. This claim requires an underlying contract, and "any action which violates, nullifies or significantly impairs any benefit or right which either party has in the [underlying] contract, whether express or implied, is a

violation of the covenant." *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 748-49 (Idaho Sup. Ct. 1989).

As discussed above, § 301 preempts French's breach of contract claim because the MOU is "effective only as part of the [CBA]." *Beals*, 114 F.3d at 894. It therefore follows that French's claim for breach of the implied covenant of good faith and fair dealing likewise rests on the CBA. For that reason, § 301 preempts French's claim for breach of the implied covenant of good faith and fair dealing. *See, e.g.*, *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987) ("[S]ection 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement."); *Hoss v. United Parcel Serv., Inc.*, 2010 WL 985733, at *4 (D. Idaho Mar. 12, 2010) ("Breach of the implied covenant of good faith and fair dealing . . . is by its very nature, intertwined with the CBA; it is therefore preempted by § 301 and dismissed.").

In sum, the Court finds that § 301 preempts both of French's contract-based claims. The question remains whether those claims should be dismissed with or without prejudice.

Because the Court has found that § 301 preempts French's state-based contract claims, the only related claim French could assert is a breach of the CBA pursuant to § 301 of LMRA. Idaho ALF-CIO maintains that French's contract claims should be dismissed with prejudice because French failed to exhaust her administrative remedies. Exhausting any grievance or arbitration remedies in the CBA is a prerequisite to

maintaining a claim for breach of a collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281 (1983). It is well-established that "an employee's failure to exhaust contractually mandated procedures precludes judicial relief for breach of the collective bargaining agreement and related claims." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985–86 (9th Cir.2007).

The mandatory procedure for pursuing a grievance under the CBA is set forth in Article XV. Ultimately, the grievance procedure ends in binding arbitration. *CBA*, Dkt. 19-1, Art. XV, § 6. In her Complaint, French alleges that she exhausted her administrative remedies by filing a charge with the EEOC. *Compl.*, Dkt. 1-4, p. 4. However, French does not allege that she complied with the mandatory grievance procedure outlined in the CBA.

Accordingly, French's state-based contract claims are dismissed with prejudice, as they are preempted by § 301. Should French wish to state a claim for breach of the CBA under § 301, she will be permitted to do so, provided that she amends her Complaint to allege facts demonstrating exhaustion, or provides facts demonstrating that the exhaustion of the arbital remedy was somehow waived. French is cautioned that she should so amend only if she has a good faith basis for doing so consistent with Federal Rule of Civil Procedure 11.[3]

_____

[3] Idaho AFL-CIO also asserts that French's contract claims should be dismissed with prejudice because she has not pleaded a "hybrid" Section 301/breach of duty of fair representation claim, and that any such (Continued)

**2.  French's Discrimination Claims under Title VII and the ADA**

**A.  Coverage of Title VII and the ADA**

Idaho AFL-CIO first seeks to dismiss French's Title VII and ADA claims, arguing it is not subject to either statute.[4] Title VII's scope includes "employers," defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). The ADA's definition of employer is the same. 42 U.S.C. § 12111(5)(A).

French has pleaded sufficient facts to show that Idaho AFL-CIO is an employer under Title VII and the ADA.[5] First, French alleges Idaho AFL-CIO employs at least 15 employees. *Compl.* ¶ 17, Dkt. 1-4. If true, this allegation would show that Idaho AFL-CIO is an employer under Title VII and the ADA.

---

claim would be precluded by the six-month statute of limitation. *See* 29 U.S.C. § 160(b). The Court agrees—a hybrid claim would be precluded by the statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 166, 103 S. Ct. 2281, 2291, 76 L. Ed. 2d 476 (1983). But the six-month statute of limitations does not apply to a strictly Section 301 suit. Instead, that statute of limitations is determined by referencing the appropriate state statute of limitations for breach of contract. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705, 86 S. Ct. 1107, 1113, (1966).

[4] French alleges IBEW is subject to Title VII and the ADA as a labor organization. *Compl.* ¶ 18, Dkt. 1-4. IBEW has not disputed this allegation.

[5] French alleges Idaho AFL-CIO is also subject to Title VII and the ADA as a labor organization. Because French is challenging conduct Idaho AFL-CIO performed in its capacity as employer, she must show that it meets the statutory definition of an employer. *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1384 (9th Cir. 1995). Thus, the Court need not address French's argument that Idaho AFL-CIO is a labor organization.

French alternatively alleges Idaho AFL-CIO is "an integrated employer with the national union." *Id.* An employer with less than 15 employees may still be subject to Title VII and the ADA if it forms an "integrated enterprise" with another entity and the two entities collectively employ at least 15 employees. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002) (explaining that the integrated enterprise inquiry looks to: "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control."). French contends that Idaho AFL-CIO is integrated with the national union because the national union "funds positions at the Idaho-State AFL-CIO and mandates certain actions be implemented upon its direction." *Compl.* ¶ 17, Dkt. 1-4.

At this stage, the Court accepts French's factual allegations as true and finds them sufficient to show that Idaho AFL-CIO is an employer under Title VII and the ADA.

### B.      Sexual Harassment under Title VII

Defendants next argue that French has failed to state a claim for sexual discrimination. Dkt. 9-1, p. 14–15. While Idaho AFL-CIO's argument on this score is rather conclusory, the Court is nonetheless inclined to agree.

A *prima facie* case of discrimination requires French to show (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). French has failed to allege that she was qualified for the position, or that

similarly situated men were treated more favorably. French does allege that Van Leuven treated her differently, "particularly in public settings, due to her gender." *Compl.*, Dkt. 1-4, ¶ 93. French claims that Van Leuven "informed [her] that his wife objected to him sitting by [her] or personally interacting with her. As a result, at public functions, Mr. Van Leuven would rearrange seating arrangements so [French] would not be seated near him[.]" *Id.* at ¶ 34. Van Leuven also did not allow any photographs to be taken of him and French together. *Id.* French concludes that Van Leuven did not require any male employees to alter any seating arrangements or to not publicly interact with him. *Id.* at ¶ 35.

Even taken as true, French's claims cannot rise to the level of actionable discrimination. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). Interacting with Van Leuven at public gatherings could hardly be considered a privilege of employment. Altering seating arrangements and refusing photographs at public functions clearly does not constitute a "material change in the terms and conditions of [French's] employment." *See Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000).

French has asserted no facts that would make this claim applicable to IBEW. Accordingly, French's sexual discrimination claims shall be dismissed without prejudice.

## C.   Hostile Work Environment under Title VII

Defendants argue that French has pleaded insufficient facts to support a claim of

hostile work environment under Title VII. A *prima facie* hostile work environment claim requires French to demonstrate that (1) she was subjected to verbal or physical harassment due to her gender; (2) the harassment was unwelcome; and (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000).

French must show that Defendants' conduct was both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). French must demonstrate that a reasonable person would have found the work environment to be "hostile or abusive," and that she actually perceived it to be so. *Id.* Whether a work environment is hostile depends on "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

### (1)      Defendant Idaho AFL-CIO

French has pleaded sufficient facts to support a hostile work environment claim against Idaho AFL-CIO. According to French, Van Leuven verbally harassed her due to her gender. She specifically alleges that "[d]uring her employment, Mr. Van Leuven regularly made sexually suggestive remarks and jokes directed towards Plaintiff or about females in general." *Compl.* ¶ 32, Dkt. 1-4. Van Leuven's comments were "laced with sexual innuendos, often implicating Plaintiff engaged in oral sex." *Id.* ¶ 36.

Second, French alleges Van Leuven's conduct was unwelcome. Van Leuven's comments "continued despite Plaintiff's direct objections to such references." *Id.*

Third, French alleges Van Leuven's conduct altered the terms and conditions of her employment. French claims that Van Leuven's comments continued throughout her employment despite her objections. And, after she requested Van Leuven to stop making "sexual comments/jokes," Van Leuven threatened that he would reduce her job duties to "answering [the] phone and paying bills." *Id.* ¶ 40. As a result of Van Leuven's comments, French was eventually required to reduce her working hours "because the hostile work environment had exacerbated her disability." *Id.* ¶¶ 46, 47. Though a hostile work environment claim cannot be premised on simple teasing or isolated incidences, French's allegations at this stage are sufficient to show that Van Leuven's comments were severe enough to alter the terms and conditions of her employment. *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) ("Repeated derogatory or humiliating statements . . . can constitute a hostile work environment.").

Taking French's factual allegations as true, the Court finds that she has pleaded sufficient facts to support a hostile work environment claim against Idaho AFL-CIO.

### (2)    Defendant IBEW

In contrast, French has alleged no facts to support a hostile work environment claim against IBEW. French's sole allegation that Defendants each aided and abetted and conspired to violate her legal rights has no factual support. *Compl.* ¶¶ 13, 14, Dkt. 1-4. The Court need not accept French's "mere conclusory statement[]" and will dismiss this

claim. *Ashcroft*, 556 U.S. at 678.

Because it is possible that an amendment could cure this claim's defect, the Court

will dismiss French's hostile work environment claim against Defendant IBEW without

prejudice.

### C.     Retaliation under Title VII

Defendants also move to dismiss French's Title VII retaliation claim. Title VII

prohibits employers from retaliating against an employee for opposing unlawful

discrimination. 42 U.S.C. § 2000e-3(a). A *prima facie* claim of retaliation requires

French to show that (1) she engaged in protected activity; (2) Defendants subjected her to

an adverse employment action; and (3) a causal link between her protected activity and

adverse employment action exists. *See Ray*, 217 F.3d at 1240. The requisite degree of

proof to establish a *prima facie* case is minimal. *Wells v. Fred Meyer Stores, Inc.*, 2006

WL 2472664, at *3 (D. Idaho Aug. 25, 2006) (citing *Messick v. Horizon Indus., Inc.*, 62

F.3d 1227, 1229 (9th Cir. 1995)).

Defendants' sole argument supporting dismissal of this claim is that French has

alleged insufficient facts to show constructive discharge under the adverse employment

action element. Constructive discharge arises when "a reasonable person in the

employee's position would have felt compelled to resign." *Penn. State Police v. Suders*,

542 U.S. 129, 141 (2004). Though constructive discharge is sufficient to satisfy the

adverse employment action element, it is not necessary to do so. Adverse employment

actions include any action that "well might have dissuaded a reasonable worker from

making or supporting charge of discrimination." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and quotation signals omitted).

It is undisputed that French was suspended without pay and eventually terminated. *Compl.* ¶¶ 64, 75, 111, 112, Dkt. 1-4. A suspension without pay and termination are adverse employment actions because they "are likely to deter victims of discrimination from complaining . . . ." *Burlington*, 548 U.S. at 68 (citation and quotation signals omitted).

Because French has sufficiently alleged adverse employment actions, whether she was constructively discharged is immaterial at this stage. The Court will therefore deny Defendants' motions to dismiss French's retaliation claim.

### D.    Disability Discrimination under the ADA

Defendants also seek to dismiss French's disability discrimination claim under the ADA. To bring a *prima facie* claim of disability discrimination under the ADA, French must establish that she (1) is disabled; (2) is qualified with or without reasonable accommodation to perform the essential functions of the job; and (3) suffered an adverse employment action because of her disability. *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996).

Defendants argue that French is not disabled. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The impairment must "substantially

limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The impairment, however, "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*

Here, French has not alleged sufficient facts to support the conclusion that she has a disability under the ADA. According to French, a bicycle accident in 2007 caused her "certain disabilities." *Compl.* ¶ 27, Dkt. 1-4. But French never specifies the nature or extent of her disabilities. She instead offers vague assertions; for example, due to her disabilities, "her speech is impacted." *Id.* ¶ 43. Without any facts concerning the nature or extent of her disabilities, French's allegations are insufficient to plausibly suggest she has a disability under the ADA. *See, e.g.*, *Bresaz v. Cnty. of Santa Clara*, 2015 WL 1230316, at *6 (N.D. Cal. Mar. 17, 2015) ("Plaintiffs offer no factual allegations to support Plaintiffs' claim that the Decedent was disabled, such as the type or nature of mental illness the Decedent had."); *Lambdin v. Marriott Resorts Hospitality Corp.*, 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) ("It is not enough for Lambdin to state, in conclusory fashion, that he has a disability. Having been injured or living with an impairment does not necessarily guarantee that one is protected by the ADA."); *Longariello v. Phoenix Union High Sch. Dist.*, 2009 WL 4827014 (D. Ariz. Dec. 15, 2009) ("Although he alleges that he is 'disabled,' . . . Plaintiff fails to identify the nature of his impairment and how that impairment substantially limits one or more of his major life activities.").

Because an amendment could cure this claim's defect, the Court will dismiss French's disability discrimination claim with leave to amend.

**3.     French's ERISA Interference Claim**

Finally, Defendants move to dismiss French's interference claim under § 510 of ERISA. That provision provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140. A *prima facie* interference claim under § 510 requires French to show that (1) she was entitled to an ERISA-protected right; (2) she suffered an adverse employment action; and (3) Defendants acted with a specific intent to interfere with her right. *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990); *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989).

French alleges no facts showing that Defendants acted with a specific intent to interfere with her ERISA rights. Although she asserts that "Defendant Idaho AFL-CIO terminated Plaintiff's employment . . . to interfere with her rights," French has provided no supporting facts. *Compl.* ¶ 129, Dkt. 1-4. The Court need not accept French's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and will dismiss this claim. *Ashcroft*, 556 U.S. at 678.

Because an amendment could cure this claim's defect, the Court will dismiss French's ERISA interference claim with leave to amend.

## CONCLUSION

In sum, French's breach of contract and breach of the covenant of good faith and fair dealing claims are dismissed with prejudice, as they are preempted by § 301 of the LMRA. French shall be permitted to allege a claim for breach of the CBA under § 301, provided she alleges facts demonstrating exhaustion, or provides facts demonstrating that the exhaustion of the arbital remedy was somehow waived. Three of French's claims— sex discrimination in violation of Title VII, disability discrimination in violation of the ADA, and the violation of § 510 of ERISA—are dismissed without prejudice as to both Defendants. French's hostile work environment claim is dismissed without prejudice as to IBEW, but is not dismissed as to Idaho AFL-CIO. Her retaliation claim as to both Defendants is not dismissed.

French will be given a short amount of time to file an amended complaint. However, the Court strongly cautions French against filing an amended complaint with the same deficiencies as her first. Federal Rule of Civil Procedure 11 provides that by presenting a pleading to the Court, an attorney represents that the claims therein "are warranted by existing law" and that "the factual contentions have evidentiary support." F.R.C.P. 11(b). The Court cannot help but note that the facts relating to IBEW's involvement in French's termination are nearly nonexistent. Similarly, without a great many more factual assertions, many of French's claims against Idaho AFL-CIO appear attenuated at best.

## ORDER

**IT IS ORDERED:**

1.      Defendant Idaho AFL-CIO's Motion to Dismiss (Dkt. 9) is **GRANTED in part** and **DENIED in part.** The Motion (Dkt. 9) is GRANTED insofar as the following claims are dismissed with prejudice: breach of contract and breach of the covenant of good faith and fair dealing. The following claims are dismissed without prejudice: sex discrimination in violation of Title VII, disability discrimination in violation of the ADA, and the violation of § 510 of ERISA. The Motion (Dkt. 9) is DENIED insofar as two claims against Idaho AFL-CIO remain: the claim for hostile work environment, and retaliation.

2.      Defendant IBEW's Motion to Dismiss (Dkt. 16) is **GRANTED in part** and **DENIED in part.** The Motion (Dkt. 16) is GRANTED insofar as the following claims are dismissed with prejudice: breach of contract, and breach of the covenant of good faith and fair dealing. The following claims are dismissed without prejudice: hostile work environment, sex discrimination in violation of Title VII, disability discrimination in violation of the ADA, and the violation of § 510 of ERISA. The Motion (Dkt. 16) is DENIED insofar as one claim against IBEW remains: the claim for retaliation.

3.      Should French decide to file an amended complaint, she is hereby ordered to do so **within twenty days** after the docketing of this order. Therein, French may allege a claim for breach of the CBA under § 301 of the Labor Management Relations Act, provided she alleges facts demonstrating exhaustion, or provides facts demonstrating that the exhaustion of the arbital remedy was somehow waived.



DATED: February 22, 2016

B. Lynn Winmill
Chief Judge
United States District Court